Ex parte HUTFLIS.

(District Court, W. D. New York.   October 19, 1907.)

1. ARMY AND NAVY ☞20—COMPULSORY SERVICE AND DRAFTS—REVIEW OF
PROCEEDINGS BY COURTS.
Selective Draft Act May 18, 1917, § 4, providing for the creation and
establishment of boards to determine all questions of exemption, and all
questions of, or all claims for, excluding or discharging individuals or
classes of individuals from the draft, creates independent tribunals for
carrying out the provisions of the act, without giving any right to the civil
courts to exercise supervisory power over their decisions, or to correct any
errors that they may commit.

2. ARMY AND NAVY ☞20—COMPULSORY SERVICE AND DRAFTS—EXEMPTIONS.
Under Selective Draft Act, § 2, providing that the draft shall be based
upon liability to military service of all male citizens or male persons,
not alien enemies, who have declared their intention to become citizens,
between certain ages; section 4, providing for the exclusion or discharge
of certain specified classes of persons, and creating boards to determine all
questions of exemption; and section 5, providing for the registration of
all male persons between the ages of 21 and 30, and declaring that all
persons registered shall be subject to draft, unless exempted or excused
as provided in that act—though aliens who have not applied for citizen-
ship are not liable to military duty, yet they are not automatically ex-
empted, but must claim exemption in order to be excused.

3. ARMY AND NAVY ☞20—COMPULSORY SERVICE AND DRAFTS—RIGHT TO
HEARING.
Proceedings on an alien's claim for exemption under the Selective Draft
Act are analogous to proceedings before a board of immigration, and the
applicants have an unquestionable right to a fair hearing.

4. HABEAS CORPUS ☞16—DETENTION BY MILITARY AUTHORITIES—COMPUL-
SORY SERVICE AND DRAFTS.
While the action of a local or district board in passing on a claim for
exemption under the Selective Draft Act cannot be reviewed as of right
by a writ of habeas corpus, such remedy will not be denied, where the
board has abused its power or exercised it arbitrarily.

Petition by Mathias Hutflis for a writ of habeas corpus. Jurisdic-
tion retained, pending an application to the Adjutant General.

Irving M. Weiss, of Buffalo, N. Y., for petitioner.
Stephen T. Lockwood, of Buffalo, N. Y., for respondent.

HAZEL, District Judge.   Section 2 of the Selective Draft Act,
so called, in so far as material to a determination of the question here-
in involved, reads as follows:

"Such draft as herein provided shall be based upon liability to military
service of all male citizens or male persons not alien enemies who have de-
clared their intention to become citizens, between the ages of twenty-one and
thirty years, both inclusive, and shall take place and be maintained under
such regulations as the President may prescribe not inconsistent with the
terms of this act."

Section 4 provides for the exclusion or discharge from the selective
draft of certain specified classes of persons from among those liable
to the draft, and for the creation and establishment by the President

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of local and district boards, the local boards being empowered to hear and determine (subject to review by district boards)—

"all questions of exemption under this Act, and all questions of or claims for including or discharging individuals or classes of individuals from the selective draft, which shall be made under rules and regulations prescribed by the President."

Section 5 providing for registration declares that all persons registered—

"shall be and remain subject to draft into the forces hereby authorized, unless exempted or excused therefrom as in the act provided.

[1] These provisions are not in conflict with one another. When read together, they clearly and definitely indicate that Congress, though not contemplating that nondeclarant aliens, not alien enemies, between the ages of 21 and 31, should be liable for military service, did intend to make them subject to the draft, and exemption dependent upon compliance with the adopted rules and regulations, which have the force of law. It was clearly the intention of Congress to create independent tribunals for carrying out the provisions of the act—tribunals, the powers and duties of which relate specifically to commandeering the military forces of the United States—without giving any right to the civil courts to exercise supervisory power over their decisions or to correct any errors that they may commit.

[2] I cannot agree with the contention that the act automatically exempts nondeclarant aliens because of the information required of them at the time of registration. Force must be given to the phrase in section 5, "unless exempted or excused therefrom, as in this act provided." A man may be subject to jury duty, and yet not liable to serve as a juror because of his exemption or immunity from serving; but he is nevertheless required to claim exemption. Applying that rule to this situation, the relator, though clearly not liable or exposed to military duty on account of his alienage and failure to apply for citizenship, is nevertheless required to claim exemption, if he wishes to be excused from serving in the army.

The relator claims, inter alia, that the writ should be allowed on the ground that through ignorance his claim to exemption was not filed; that he has had no hearing; that he was misled by a member of the board, though unintentionally, as to the method of filing his claim for exemption; that he was unfamiliar with the provisions of the act, was unable to read or write English, and was uninformed as to the rules and regulations printed on the notice requiring claims for exemption to be filed or submitted on or before the seventh day following its mailing; that he did not know of the provision requiring affidavits in support of a claim for exemption to be furnished within 10 days after filing the claim; and that on learning that he had been accepted he applied to the local board for a form upon which to file his claim for exemption, and was given by mistake an appeal blank, upon which he specified that he was a nondeclarant alien, but which the district board disregarded.

[**3, 4**] In this situation the questions are whether the relator has waived the privilege of asserting his claim for exemption, and whether the certificate of the local board accepting him for military service, resulting in his subsequent arrest as a deserter for disobeying an order of entrainment for the army mobilization camp, is final and conclusive. It seems to me, under the circumstances, that waiver is of doubtful application, for at no time did the relator intend to relinquish any rights. His ignorance and illiteracy are matters that the local board may properly consider in reopening his case. Proceedings under this act are analogous to proceedings before the board of immigration, wherein aliens have the unquestionable right to a fair hearing to determine their status and right to remain in the United States; but in this case the relator has had no hearing whatever, his evidence is not in, and his right to exemption has not been passed upon. The relator, claiming to be a subject of Austria and a nondeclarant alien, if his claim were true, would be in the exemption class. While the action of the local or district board cannot be reviewed as of right by a writ of habeas corpus, such remedy would not be denied, where a board had abused its power or exercised it arbitrarily.

The contention that the relator is deprived of his treaty rights under the most favored nation clause in the treaty existing between the United States and Austria-Hungary is untenable. Assuming, but not deciding, that such clause applies to subjects of Austria, our treaty with Switzerland (1850), providing substantially that citizens of either country domiciled in the other shall be free from personal military service (11 Stat. 589), is believed not inconsistent with the Selective Draft Act; for, as heretofore pointed out, section 2 by implication excepts aliens who are merely denizens of the United States, only requiring them to file a claim to exemption in accordance with the rules and regulations prescribed by the President. Moreover, exemption because of treaty rights is not mentioned in the act under discussion, section 14 of which suspends all laws in conflict therewith.

It is questioned whether this court should interfere in behalf of the relator in view of his induction into the military service; but as it has come to my attention that Provost Marshal General Crowder has recently promulgated a rule (see Official Bulletin, October 16, 1917, p. 12) for reopening cases where registrants, through their nonculpable ignorance, have been reported for military duty and sent to mobilization camps, for the purpose of determining whether they should be exempted or excused from military service, it will probably be sufficient for the court to suggest such procedure herein. Hence, without making the writ absolute at this time, but retaining jurisdiction, I will allow 10 days for application to the Adjutant General for permission to reopen the case before the local board under the above rule, and for the relator to file his claim for exemption and affidavits in support thereof.

So ordered.