**UNITED STATES ex rel. FILOMIO v.
POWELL et al.**

No. 158a.

District Court, D. New Jersey.
April 10, 1941.

184

Stein & Wiener, of New York City, for petitioner.

· Charles M. Phillips, U. S. Atty., of Newark, N. J., and Thorn Lord, Asst. U. S. Atty., of Trenton, N. J. (A. A. Melniker, of Jersey City, N. J., and John T. Daly, of New York City, of counsel), for respondent.

FORMAN, District Judge.

The petition for a writ of habeas corpus filed herein is executed on behalf of Fred Filomio by David Stein, his attorney, and alleges the following facts:

Fred Filomio is confined and restrained of his liberty at Fort Dix, New Jersey by reason of an order of Local Board No. 102, County of Bronx, State of New York, pursuant to the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix § 301 et seq.

On or about December 24, 1940, the Local Board classified Fred Filomio in Class I-A as available and fit for general military service on the basis, among other things, that his sister Evelyn Filomio was then working and was able in part to contribute towards the support of Fred Filomio's father and mother. He was notified · to appear for induction in the armed forces of the United States on the 13th day of January, 1941.

Subsequent to this classification Evelyn · Filomio lost her position, and became unable to contribute to the support of the said parents. Accordingly, Fred Filomio filed with the Local Board a request for a reclassification on the ground of dependency. The Local Board on or about January 10, 1941, considered the application but declined to re-classify him on the basis of the change in status, and failed to notify him of this action.

Fred Filomio appealed from this action by letter directed to the Local Board demanding in part: "That you consider this my appeal from your failure to re-classify and transmit my entire folder to the Appeals Board for action." -

The Local Board declined to transmit the folder to the Appeals Board, and notwithstanding the fact that an appeal stays induction under the Selective Training and Service Act of 1940, Filomio has been transferred to Fort Dix, New Jersey, but he has refused to take an oath of induction.

In consequence of the above allegations a writ of habeas corpus was issued directing that Filomio be produced before this court.

At the hearing on the return of the writ the following facts were disclosed:

The questionnaire filed with the Local Board shows that Filomio's father, mother, and sisters, Angelina and Evelyn, all living in the same household, were dependent upon him for support. Except for Filomio's contribution the only income of these dependents was in the amount of $250 annually received by the mother, and $700

annual wages received by Evelyn, who contributed about $5 a week to the support of the family.

Eugene L. Larkin, Chairman of the Local Board, testified that it was dissatisfied with the statements in Filomio's questionnaire, and, hence, it had Filomio before it for a hearing on November 22, 1940, and it determined "that his family were very comfortably situated, that they had a country place where they spent the summer, and his income was unimportant to the family." Accordingly, he was placed in Class I under the Act. When the physician's report was received on December 24, 1940, Filomio was placed in Class I–A. Notice to report for induction on January 13, 1941, was received by Fred Filomio on December 26, 1940.

On January 4, 1941, David Stein, attorney as aforesaid, wrote a letter to Joseph R. Damico, the Appeals Agent of the Local Board, which was received on January 6, 1941, describing the financial dependency of Filomio's parents and sisters. In addition, it was stated that notwithstanding the fact that time for appeal had elapsed, the Local Board should either permit an appeal in view of the fact that induction had not yet occurred, or in the alternative, re-classify.

On January 8, 1941, David Stein addressed another letter to the Board and forwarded it together with Fred Filomio's affidavit so that it was received by the Board on the same day. The letter stated that Evelyn Filomio no longer worked or contributed funds to her parents. An extension of time to appeal from the original classification was requested, or in the event the Board felt powerless to grant such extension, application for re-classification was made and upon denial of the latter an appeal was sought from that ruling.

The affidavit of Fred Filomio stated that Evelyn Filomio, who had been employed in a doll factory at $15 a week, was no longer employed. The same relief is requested as in the letter of David Stein; specifically, in the following language: "In the event that you deny me re-classification and deny an extension of time to appeal, that you consider this as my appeal from your failure to re-classify, and transmit my entire folder to the Appeals Board for action."

The Board declined to permit an appeal from the original classification, and took the position that since the application was not made within the five-day period prescribed by the regulations (see Selective Service Regulations, Paragraph 371a, quoted in full infra) an extension would not be granted.

Furthermore, the Local Board declined to re-classify although it does not appear that a formal hearing was had in this respect. The Chairman of the Board, Eugene L. Larkin, with reference to this conclusion, stated: "* * * there was nothing, no new evidence here; the fact that the sister who contributed $5 a week to the support of the family had lost her job, which he explained to us at great length at a prior occasion, was a seasonal job, she worked on dolls, I think it was, didn't constitute any reason for reopening the case. $5 a week is just enough to feed a person, not to support a family. We didn't give that any consideration whatsoever, and told him so, that his status was the same and we didn't see any reason for having a rehearing on his case unless some new evidence could be produced." Record, p. 17.

The Board also declined to forward papers in connection with Filomio's case to the Appeals Board, and, hence, in this fashion it declined to permit an appeal from its denial of re-classification.

■ Preliminary questions herein have been proffered by counsel for both the petitioner and the government. Filomio complains of the Board's failure to mail a notice of continuance of classification following its denial of re-classification. The regulations provide that: "If the local board refuses to reclassify, after the registrant has requested reclassification, because of a change in circumstances, it shall mail a Notice of Continuance of Classification (Form 58) to the registrant." Selective Service Regulations, Paragraph 387, quoted in full infra. Good practice upon the part of the Local Boards undoubtedly requires a notice of continuance of classification to be mailed. Fortunately, no harm has been done by this omission, since it appears that Filomio was apprised by Chairman Larkin of the refusal to reclassify on the very moment of denial. For that reason we cannot say that a fatal error has been committed by the failure of the Board to transmit form 58.

■ The government contends that the petition should be dismissed, because there

is a variance between the proof and allegations. The petition alleges that Filomio was originally classified on December 24, 1940, whereas the testimony reveals he was classified on November 22, 1940. It does not appear that he was finally classified as early as November 22, 1940. He was only placed in Class I at that time, and was not placed in Class I-A until the physician made his report on December 24, 1940. Furthermore, Filomio did not receive notice of classification until after December 24, 1940, and, hence, could not have known of his partial classification on the earlier date.

The government also contends that Filomio's failure to fill out and sign the "Appeal to the Board of Appeal" blank on his questionnaire, pursuant to the procedure established by the regulations is fatal. This regulation provides as follows: "If the person appealing wishes the board of appeal to review any other appealable determination of the local board, the person appealing shall fill out and sign the 'appeal to board of appeal' on the questionnaire. The person appealing shall attach to the questionnaire a written statement specifying the class or classes in which the person appealing believes the registrant should be placed." Volume Three, Selective Service Regulations. Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXVII, Paragraph 372b.

It appears that the questionnaire is lodged with the Local Board, and unless the Local Board returns it to the applicant it is impossible to perfect an appeal on that form pursuant to the above quoted regulations. Evidence is conflicting as to whether Filomio demanded the questionnaire in order that he might perfect his appeal. We do not feel that it was readily available, and hence his omission in this respect was beyond his control.

The government questions the jurisdiction of this court to consider the case on its merits. It is suggested that if Filomio had declined induction and subjected himself to charges of desertion by the military authorities he could then appropriately test his detention in a habeas corpus proceeding. It is claimed that his failure in this respect confines his application for relief to the procedure provided in 10 U.S.C.A. § 652 as follows: "When by reason of death or disability of a member of the family of an enlisted man, occurring after his enlist-

ment, members of his family become dependent upon him for care or support, he may, in the discretion of the Secretary of War, be discharged from the service of the United States."

This attack upon the jurisdiction of the court is further based upon the case of Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876. The petitioner in that case refused to present himself for induction. He was arrested and tried before a general court-martial for desertion. His release upon habeas corpus was sustained on the ground that his local draft board had omitted substantial procedural requirements in his induction, and, hence, the Army had not acquired jurisdiction over his person. It is submitted by the government that Filomio, the petitioner in the present case, presented himself for induction, although under protest, whereas Ver Mehren failed to present himself in any manner and had to be arrested. The government contends that actual arrest and detention gave the basis for the issuance of the writ in the Ver Mehren case but such an arrest being absent in the present case where the petitioner protestingly surrendered himself, such surrender does not give basis for the allowance of the writ of habeas corpus.

Numerous cases are available in which civil courts assert jurisdiction in cases wherein the petitioner in a habeas corpus proceeding was actually in the army, e.g., Arbitman v. Woodside, 4 Cir., 258 F. 441, Ex parte Tinkoff, D.C., 254 F. 222. No case has been presented nor has one been found sustaining the government's point.

The function of the writ of habeas corpus is to release a person unlawfully restrained of his liberty. Submission to that restraint under protest as in the case at bar obviously should not deprive one of that right. That the petitioner should subject himself to charges of desertion at the instance of the military authorities in order to preserve his inherent right to release from unlawful restraint upon habeas corpus is a requirement far too exacting to be projected into this field of the law without direct authority therefor.

We do not think that Filomio's conduct constitutes a waiver of civil relief: He submitted with unequivocal protest; he refused to take the oath on induction, and we conclude that he could not have more peremptorily demonstrated his objection without forcibly resisting induction—this he was not required to do.

■ There has been injected into this case some argument with regard to the time within which an appeal may be taken from the Local Board's classification. Selective Service Regulations, paragraph 371a, quoted in full infra. The petitioner made application to the Local Board after the five-day period had elapsed, and contends that an extension of time was still within the Board's discretion. The government contends that application for an extension of time is precluded unless made within the five-day period. The petitioner, however, charges no grievances to the Board's refusal to extend the time for his appeal. Our determination in this respect is sought with the hope that it will serve as some precedent which will dispel conflicting interpretations by the Local Boards. Since the petition does not raise this issue it is academic and moot and we would be unwarranted in a consideration of it.

■ We have disposed of what may be termed the preliminary issues and counter issues between petitioner and the government, and now come to the merits of the petition which concern the failure of the Local Board to permit an appeal from its refusal to re-classify Filomio. He rests heavily upon this narrow ground for relief limiting himself by the following language in his petition:

"That the said Fred Filomio has advised the said Commanding Officer and the said Local Board that he is unwilling to be inducted into the armed forces until such time as the Courts or other competent tribunals pass upon his right *to appeal from the denial of reclassification* herein referred to, and that if it is held that such right of appeal does not lie that he will immediately present himself for induction and comply with all the rules and regulations appertaining thereto." (Italics supplied.)

Provision is made in the Selective Service Law and Regulations for re-classification and appeal from re-classification in the following language:

"Upon receiving new evidence the local board may at any time before induction reconsider the classification of any registrant. If the local board places the registrant in a different classification, the board shall mail a Notice of Classification (Form 57) to the registrant and shall notify the government appeal agent. If the local board refuses to reclassify, after the registrant has requested reclassification, because of a change in circumstances, it shall mail a No-

tice of Continuance of Classification (Form 58) to the registrant." Volume Three, Selective Service Regulations. Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXX, Paragraph 387.

"Appeals which may be made after reclassification are governed by Section XXVII. If an appeal is made, the local board shall forward with the appeal a statement *as to why it reclassified the registrant.*" Volume Three, Selective Service Regulations. Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXX, Paragraph 388.

The pertinent portion of Section XXVII is as follows: "Unless the time therefore is extended by the local board, an appeal from any appealable local board classification (other than an appeal by a registrant classified in Class I-B or Class I-E who claims a lower classification) shall be made within five days after the local board has mailed to the registrant his Notice of Classification (Form 57), as distinguished from a Notice of Continuance of Classification (Form 58), or, if the registrant has requested an opportunity to appear in person before the local board pursuant to paragraph 368, within five days after the day set for the registrant's appearance, whichever is the later. The five days are counted as beginning on the day after the Notice of Classification is mailed or, if the registrant has requested an opportunity to appear in person before the local board pursuant to paragraph 368, on the day after the day set for the registrant's appearance, whichever is the later." Volume Three, Selective Service Regulations, Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXVII, Paragraph 371a.

It is argued on behalf of the petitioner that the language of the regulations clearly indicates that the right to appeal from the refusal of a Local Board to re-classify was intended; that such an appeal has equal equity with the right of an appeal from the original classification, and that to deny the right of such an appeal is to depart from the commonly accepted, democratic principles which should be the basis of the nature and spirit of the Selective Service Regulations. Furthermore, it is argued that the Local Board is powerless to deny any appeal from its own decision, because it is the function of the Appeal Board to dismiss an appeal which is taken

improperly. The petitioner concedes that some confusion may arise because in paragraph 371a of the regulations, supra, it is provided that " * * * an appeal from any appealable local board classification * * * shall be made within five days after the local board has mailed to the registrant his Notice of Classification (Form 57), *as distinguished from a Notice of Continuance of Classification (Form 58). * * * "* (Italics supplied.) He points out that the regulations provide that a notice of continuance of classification is to be mailed by the Local Board to the registrant not only when it refuses to reclassify him, paragraph 387, supra, but also when an Appeal Board has decided his appeal adversely, Volume Three, Selective Service Regulations, Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXVII, Paragraph 377b(1), and where the President has similarly decided an appeal adversely to the registrant. Volume Three, Selective Service Regulations, Executive Order No. 8560, Promulgated by the President October 4, 1940, Section XXVIII, Paragraph 381(1). In the case of an adverse decision of the Appeal Board obviously no appeal could be addressed to it from its own judgment affirming the Local Board and in the case of such a decision by the President there can be no further appeal. He submits that it was the latter two situations which the framers of the regulations had in mind when they distinguished between the notice of classification (form 57) and the notice of continuance of classification (form 58). Hence, it is argued the language of paragraph 371a places no limitation upon that of paragraph 388 which is broad enough to comprehend appeals from refusals to re-classify.

The government insists that there is no authority in the law or regulations authorizing an appeal from the refusal of a Local Board to re-classify.

We feel that to rule in agreement with the petitioner's contentions would require an interpolation of words in the regulations which do not now exist. Paragraph 388, supra, makes provisions for appeals from re-classification. No mention is made of appeals from a refusal to re-classify. The effect of providing for appeals from refusals to re-classify would be to open the door to innumerable appeals sufficient, perhaps, to "bottle-neck" the entire system of Selective Service. Unless the omission by Congress is entirely obvious and patent, we hold that the court is without authority to read additional language into the law and the regulations.

Furthermore, we cannot agree with the construction placed upon the distinguishing phraseology, reference to which was made by petitioner, and we hold that there is no provision for appeal after the forwarding of form 58, upon a decision to refuse to reclassify.

In general, Filomio's application for a re-classification, based upon the alleged change in circumstances, is analogous to a petition in an ordinary civil suit for a new trial because of newly discovered evidence. In the latter case the general rule is firmly established that the trial court's refusal to grant a new trial will not be disturbed in the absence of manifest abuse of discretion. Royal Ins. Co. v. Eastham, 5 Cir., 71 F.2d 385, certiorari denied 293 U.S. 557, 55 S.Ct. 110, 79 L.Ed. 658; District Nat. Bank v. Maiatico, 61 App.D.C. 242, 60 F.2d 1078; McIntyre v. Texas Co., 2 Cir., 48 F. 2d 211; State Bank v. Henderson County, 6 Cir., 35 F.2d 859, certiorari denied, 281 U. S. 728, 50 S.Ct. 245, 74 L.Ed. 1145; Fitzgerald v. Dodson, 58 App.D.C., 150, 26 F.2d 522; Ward v. Morrow, 8 Cir., 15 F.2d 660. Otherwise the trial court's determination being discretionary, is not reviewable on appeal. Ellerd v. Griffith, 5 Cir., 29 F.2d 402, Adkins-Polk & Co. v. G. Amsinck & Co., 5 Cir., 10 F.2d 361. Thus, in this analogous situation one discerns a degree of finality in the trial court's decision to refuse a new trial on the ground of newly discovered evidence and in similar action by a Local Board.

A number of cases arose following the enactment of the Selective Service Act of 1917, 50 U.S.C.A. § 226 note, in which use was sought to be made of the writ of habeas corpus for release from the army. Among them is the case of United States v. Kinkead, D.C., 248 F. 141, affirmed, 3 Cir., 250 F. 692, in which appears the following pertinent comment with reference to the decisions of draft boards and the conclusiveness of their determinations:

"The next question is whether their decision may be reviewed in this proceeding. The act provides that decisions of the district boards shall be 'final,' save only as the President may see fit to modify or reverse them. I think it may be considered as settled beyond all question that Congress may make the decisions of the executive de-

partments or subordinate officials thereof, to whom it has committed the execution of acts similar in their general nature to this, final on questions of fact which arise in administering such acts; and, when it has done so, the courts may disturb such decisions only when it appears that the party involved has not been afforded a full and fair hearing, or that the executive officers have acted contrary to law, or have manifestly abused the discretion committed to them by the statute. It has been so held in respect to the present act in Angelus v. Sullivan, supra [2 Cir., 246 F. 54]; [United States ex rel.] Koopowitz v. Finley, supra [D.C., 245 F. 871]; [Ex parte] Hutflis, supra [D.C., 245 F. 798]; United States ex rel. Troiani v. Heyburn, supra [D.C., 245 F. 360]; Summertime v. Local Board, Div. No. 10, supra [D.C., 248 F. 832]; Ex parte Beck (D.C.Mont.) 245 F. 967. Such conclusion is the necessary result of a long line of decisions of the United States Supreme Court, some of which are as follows: Nishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L. Ed. 317; Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Zakonaite v. Wolf, 226 U.S. 272, 33 S.Ct. 31, 57 L.Ed. 218; Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L. Ed. 967; Gegiow v. Uhl, 239 U.S. 3, 36 S. Ct. 2, 60 L.Ed. 114; United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040. The Supreme Court has very recently held that the act in question is not repugnant to the Constitution, because it confers semijudicial powers upon administrative officers. * * *

"It is a necessary outgrowth of the above rule that if, in any given case, there was no evidence before such executive officers upon which they could reach a given conclusion, their decision can be reviewed by the courts, because in such a case they would have acted contrary to law, and, in effect, have denied a fair hearing. And so it has been uniformly held that, if there was any evidence before such officers to justify their conclusion, the courts could not disturb their findings of fact. No question is raised in this case that the relator did not have a fair hearing, in the sense that every opportunity was afforded to him to present evidence in support of his claim. The return of the local board is to the effect that they considered all of the evidence which is now before this court. It is permissible, therefore, to inquire in this proceeding only as to whether there was any evidence before the boards from which they could have found that the relator is a citizen of the United States." 248 F. 141, 143, 144.

Again in Ex parte Platt, D.C., 253 F. 413, the court said:

"There seems to be no merit to this second contention. The Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159 [62 L.Ed. 349], L.R.A.1918C, 361, Ann.Cas.1918B, 856, establish the proposition that the local board has the power to exercise certain judicial functions, even though it is not a court, and subject to the Judiciary Law as a whole. The construction of the Draft Law * * * as indicating the intention of Congress, makes it certain, in the opinion of this court, that the determination of the local board is final, except by appeal to the district board or the President, in any case where the local board has authority to act. Such determination involves an exercise of judgment based upon such evidence as is before the board. It is like the determination of an executive officer or of a board of inquiry in an immigration hearing, and, when made final by Congress, is not the subject of appeal to the courts.

"The question is therefore limited to the familiar proposition, based upon the decision in Angelus v. Sullivan [2 Cir.], 246 F. 54, * * * that the courts have jurisdiction over any official presuming to act under a statute, to the extent of restricting him to his powers given by that statute, and to prevent, by writ of habeas corpus, wrongful detention where the authority of that statute has been exceeded. Gegiow v. Uhl, 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114; United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040." 253 F. 413, 414.

Finally in Arbitman v. Woodside, 4 Cir., 258 F. 441, the court made the following comment: "The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence; but upon proof that the investigation has not been fair, or that the board has abused its discretion by a finding contrary to all the substantial evidence, relief should be given by the courts under the writ of habeas corpus. United States v. Ju Toy, 198 U.S.

253–280, 25 S.Ct. 644, 49 L.Ed. 1040; Lewis v. Frick, 233 U.S. 291–304, 34 S.Ct. 488, 58 L.Ed. 967; Tang Tun v. Edsell, 223 U.S. 673–675, 32 S.Ct. 359, 56 L.Ed. 606; Low Wah Suey v. Backus, 225 U.S. [460] 466–468, 32 S.Ct. 734, 56 L.Ed. 1165; Angelus v. Sullivan [2 Cir.], 246 F. 54, 158 C.C.A. 280; [United States ex rel.] Koopowitz v. Finley (D.C.) 245 F. 871; [Ex parte] Hutflis (D.C.) 245 F. 798; United States ex rel. Troiani v. Heyburn (D.C.) 245 F. 360; Summertime v. Local Board, No. 10 (D.C.) 248 F. 832; Ex parte Beck (D.C.) 245 F. 967; Wong Yee Toon v. Stump [4 Cir.] 233 F. 194, 147 C.C.A. 200." 258 F. 441, 442.

We conclude that neither the Selective Training and Service Act of 1940 nor the regulations promulgated thereunder gave Filomio the right to appeal from the decision of the Local Board to refuse to reclassify him.

The petitioner also makes the point that the Local Board has no alternative but to send a file to an Appeal Board where an appeal is requested and that only the Appeal Board has the jurisdiction to dismiss the appeal if it is unwarranted. Since we have ruled that there is *no* appeal from a refusal of the Local Board to re-classify the point is without merit in such instance.

■ In view of the fact that the disposition of such refusal by the Local Board is final, in so far as relief from executive agencies established under the act is concerned, the question arises as to whether the court can afford petitioner any relief. This, as is indicated in the cases cited above, we cannot do unless the denial of his re-classification constitutes an abuse of discretion upon the part of the board. In other words our conclusion that the action of the Local Board in refusing to re-classify him is final and not subject to appeal to the Appeal Board does not leave the registrant helpless if it is arbitrary and capricious. Under such a circumstance he may have the action reviewed by the court, and while petitioner in this case has rather closely confined his complaint to the denial by the Local Board of his appeal from its refusal to re-classify, the court should, while the matter is presently before it, determine whether the refusal, itself, was an abuse of its discretion and the result of arbitrary action which would render it void. We will now direct our inquiry to this aspect of the Local Board's action.

■ The petitioner concedes that the court cannot grant him any relief in the nature of an appeal from the Board's decision on original classification. It may be remarked that from the evidence before the court this Local Board, in holding that the father and mother and two sisters, claimed to be dependents of the petitioner, could subsist comfortably on an income of $250 a year with the contribution of $5 a week from a sister, likely to be discontinued due to the seasonableness of her job and some nebulous reference to a country place in which they might live in the summertime, was, to say the least, a shadowy basis for classifying the petitioner as being without dependents. Still, in the present state of these proceedings the court may not interfere with that decision. We are relegated to an investigation to ascertain only whether the refusal to *re-classify* had beneath it *any* basis.

Under paragraph 387 of the regulations, supra, Filomio was not entitled to a reconsideration of his classification unless he presented new evidence to the Local Board. His "new evidence" constituted a change in circumstances arising out of the cessation of his sister's wages from which she contributed about $5 weekly to the support of her family. Eugene L. Larkin, Chairman of the Local Board, testified that the Board considered this proffer of alleged new evidence, but refused to re-classify upon it because the circumstances of the sister, at the time of Filomio's original classification, were reviewed, and her weekly contribution was not considered a support for her family but reimbursement for her own living expenses. Thus, the refusal by the Board was apparently based upon its consideration that no "new evidence" was proffered to it because it already had contemplated the possibility that the petitioner's sister would cease her contribution of $5 per week when the original classification was made. Therefore, the court is not in position to hold that the refusal of the Local Board to re-classify was without *any* foundation. We conclude that it was within the Board's discretionary power to reject the proffer of alleged new evidence as a basis for re-classification and that its determination so to do was a reasonable exercise of that power with which this court cannot interfere.

The court takes cognizance of the fact that the Selective Service Boards are composed of citizens, who give their time and

effort gratuitously as a public service in administering this law. At the same time it is important for them to remember that they are dealing with the sacrifices of the youth of this country, which far outweigh their own contributions, handsome as they may be. In Ver Mehren v. Sirmyer, supra, the court very aptly said:

"The induction of a civilian into military service is a grave step, fraught with grave consequences. It means, among other things, that he is subject to military law instead of to the ordinary common and statutory law. A new status is taken on; he becomes a soldier; new responsibilities are assumed; failure to strictly meet these responsibilities is followed by extreme punishment. All this is quite right and necessary, and meets no criticism at our hands. But what we emphasize is the necessity that all the steps prescribed by statute, and by regulations having the force of law, shall be strictly taken before it can be held that a person has been lawfully inducted into the military service." 36 F.2d 876, 881.

Several obvious irregularities characterized the conduct of this Local Board, among which were:

1. The failure to give formal consideration to the petitioner's request for re-classification. The evidence indicates that his letter was merely passed around by the Board members and perfunctory attention was given to the same.

2. The Board failed to send out the required form 58.

3. The Board stood upon ceremony in connection with petitioner's request for an appeal claiming that an appeal must be executed on the original questionnaire blank not in the possession of the petitioner but which it retained in its own files at all times.

4. The showing before this court indicated that the decision of the Board on original classification was made on very flimsy foundation of fact, and, to say the least, sketchy reasoning.

Unfortunately none of these delinquencies is such as to give the court the right to intrude or substitute its judgment for that of the Local Board under the type of proceedings brought by this petitioner.

Had this petitioner been alert and filed an appeal from the *original* classification of his Local Board within the time limited by law, the action of the Board might have been subjected to review by the Appeal Board with advantageous result to the petitioner. However, he did not exercise his right in this respect within time. The importance of prompt compliance by all registrants with the provisions of the law in order that their rights may receive the maximum protection is emphasized in this case.

Under all of the foregoing considerations we must discharge the writ of habeas corpus and an order should be taken accordingly.