**UNITED STATES ex rel. ERRICHETTI v. BAIRD.**

Misc. No. 544.

District Court, E. D. New York.

June 27, 1941.

Jochanon I. Rudavsky, of Brooklyn, N. Y., for petitioner.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for respondent.

ABRUZZO, District Judge.

A writ of habeas corpus, dated June 10, 1941, directed Colonel Baird, Commanding Officer of Camp Upton, Yaphank, New

York, to produce the body of Louis R. Errichetti, for the purpose of inquiring into the cause of his detention. The petition for the writ was made by Mary Errichetti, who stated that it was also on behalf of Carmella Errichetti, wife of the selectee.

The return of Colonel Baird stated that the selectee was being held by authority of the United States as a soldier in the Army of the United States, after he was lawfully selected for service therein and had been duly and regularly inducted under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq.

The petitioner, Mary Errichetti, filed a traverse to the return on June 13, 1941, wherein she denied that Louis R. Errichetti was lawfully selected for service and that he had been duly and regularly inducted therein under the provisions of the Act.

As no new pertinent matter was submitted in the traverse, the decision herein must be determined entirely on the Case Record.

Errichetti was registered on October 16, 1940, and filed his questionnaire on December 26, 1940. He made a claim that his mother was a dependent because his father did not contribute to her support. It appears that his mother is fifty-nine years of age and his support of her began in 1935. He contributed $15 per week (from a salary of $23 per week) and his mother received $14 a week from other sources.

On March 6 and 7, 1941, he notified the Local Board of a change in his status, stating that he had been married on February 23, 1941, maintained his own home, his wife did not work and was not physically able to earn her own living and that she was partially under medical care.

On March 7, 1941, the notice to appear for a physical examination was mailed to the selectee and on March 15, 1941, he was examined and found qualified for general military service.

After his classification in Class 1–A on March 17, 1941, he appeared before the Government Appeal Agent and stated that he was engaged on September 5, 1940, that an engagement party had taken place at home and that he and his wife had been going together for two years prior to the formal engagement. He asserted that his wife had been told by a physician that she had a spot on her lung and probably had tuberculosis. A communication to the physician on March 22, 1941, elicited the fact that she did not have indications of tuberculosis.

The selectee appealed from the classification of the Local Board by signing a notice of appeal on the back of his questionnaire.

On April 22, 1941, the claim of dependency was reviewed by the Local Board and a minute on the back of the questionnaire shows this entry: "New Evidence—Class 1–A continued—suspicious, confusing•statements."

On May 2, 1941, the Board of Appeal, handed down its decision continuing the selectee in Class 1–A by a vote of five to nothing. On May 8, 1941, he was sent a notice of continuation of classification and also notified to appear for induction into the Army on May 24, 1941.

On May 13, 1941, he and his wife appeared before the Local Board and the Government Appeal Agent and requested a further hearing, which was granted. The induction date was postponed awaiting the result of the X-ray of the wife. The minutes show that another physician who examined the wife of the selectee had informed the Local Board that the selectee and his wife had called upon him and requested a letter stating that the wife was unable to work.

On May 26, 1941, the doctor wrote to the Board and stated that his examination and X-rays showed that the wife had a healed primary tuberculosis lesion which should be watched in case of reactivation and that she should be examined and fluoroscoped every six months and X-rayed once a year.

The entire Board and Appeal Agent convened on May 27, 1941, and it was their unanimous opinion that the selectee should be continued in Class 1–A and inducted.

Pursuant to a notice, the selectee reported on June 4, 1941, took the oath of enlistment and is now in the Army of the United States at Camp Upton, Yaphank, New York.

The selectee claims that the Local Board in placing him in classification 1–A and not 3–A acted in a capricious and arbitrary manner and that its conclusions were not sustained by substantial evidence.

It is the respondent's contention that this selectee was lawfully selected for service and has been duly and regularly inducted into the Army under the provisions of the Selective Training and Service Act of 1940; and that the Board did not act capriciously or arbitrarily in arriving at its determination, but on the contrary its conclusion was

390

sustained by the substantial evidence of the case record.

The Selective Training and Service Act of 1940, Section 10 (a), Subsection (2), 50 U.S.C.A.Appendix, § 310 (a) (2), provides: "* * * Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe. * * *"

Under a similar section, a number of cases arose, which have been reviewed in United States ex rel. Filomio v. Powell et al., D.C., 38 F.Supp. 183, 188, which states at page 188:

"A number of cases arose following the enactment of the Selective Service Act of 1917, 50 U.S.C.A. § 226 note, in which use was sought to be made of the writs of habeas corpus for release from the army. Among them is the case of United States v. Kinkead, D. C., 248 F. 141, affirmed 3 Cir., 250 F. 692, in which appears the following pertinent comment with reference to the decisions of draft boards and the conclusiveness of their determinations:

" 'The next question is whether their decision may be reviewed in this proceeding. The act provides that decisions of the district boards shall be "final," save only as the President may see fit to modify or reverse them. I think it may be considered as settled beyond all question that Congress may make the decisions of the executive departments or subordinate officials thereof, to whom it has committed the execution of acts similar in their general nature to this, final on questions of fact which arise in administering such acts; and, when it has done so, the courts may disturb such decisions only when it appears that the party involved has not been afforded a full and fair hearing, or that the executive officers have acted contrary to law, or have manifestly abused the discretion committed to them by the statute. It has been so held in respect to the present act in Angelus v. Sullivan, supra (2 Cir., 246 F. 54) ; United States ex rel. Koopowitz v. Finley, supra (D.C., 245 F. 871) ; (Ex parte) Hutflis,

supra (D.C., 245 F. 798) ; United States ex rel. Troiani v. Heyburn, supra (D.C. 245 F. 360) ; Summertime v. Local Board, Div. No. 10, supra (D.C., 248 F. 832) ; Ex parte Beck (D.C.Mont.) 245 F. 967. Such conclusion is the necessary result of a long line of decisions of the United States Supreme Court, some of which are as follows: Nishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317; Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Zakonaite v. Wolf, 226 U.S. 272, 33 S.Ct. 31, 57 L.Ed. 218; Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967; Gegiow v. Uhl, 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114; United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040. The Supreme Court has very recently held that the act in question is not repugnant to the Constitution, because it confers semijudicial powers upon administrative officers. * * *

" 'It is a necessary outgrowth of the above rule that if, in any given case, there was no evidence before such executive officers upon which they could reach a given conclusion, their decision can be reviewed by the courts, because in such a case they would have acted contrary to law, and, in effect, have denied a fair hearing. And so it has been uniformly held that, if there was any evidence before such officers to justify their conclusion, the courts could not disturb their findings of fact. No question is raised in this case that the relator did not have a fair hearing, in the sense that every opportunity was afforded to him to present evidence in support of his claim. The return of the local board is to the effect that they considered all of the evidence which is now before this court. It is permissible, therefore, to inquire in this proceeding only as to whether there was any evidence before the boards from which they could have found that the relator is a citizen of the United States.' 248 F. 141, 143, 144.

"Again in Ex parte Platt, D.C., 253 F. 413, the court said:

" 'There seems to be no merit to this second contention. Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159 (62 L.Ed. 349), L.R.A.1918C, 361, Ann.Cas.1918B, 856, established the proposition that the local board has the power to exercise certain

judicial functions, even though it is not a court, and subject to the Judiciary Law as a whole. The construction of the Draft Law * * * as indicating the intention of Congress, makes it certain, in the opinion of this court, that the determination of the local board is final, except by appeal to the district board or the President, in any case where the local board has authority to act. Such determination involves an exercise of judgment based upon such evidence as is before the board. It is like the determination of an executive officer or of a board of inquiry in an immigration hearing, and, when made final by Congress, is not the subject of appeal to the courts.' * * *

"Finally in Arbitman v. Woodside, 4 Cir., 258 F. 441, the court made the following comment: 'The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence. * * * ' "

█ These cases undoubtedly settle the question that the determinations of the local boards are final unless the selectee's rights were invaded. It is not the province of this court to review the evidence before the local board but only to review the case record to determine whether or not there was sufficient evidence before the board to substantiate its findings.

The board in its findings on April 22, 1941, in commenting on the new evidence, concluded that the statements were confusing and suspicious. The statements submitted to the Board corroborates that finding. The selectee first claimed to be the support of his fifty-nine year old mother and urged deferment because of that dependency. He voluntarily changed his status by marrying on February 23, 1941, after filing his questionnaire. It does not appear what work if any his wife performed before her marriage or how she obtained her support; but it was stated that she was unable to earn her own living because she was physically ill.

The medical report was devoid of any opinion that the young lady was unable to work because of her physical condition. A study of the physician's report leads one to believe that she was undoubtedly in better physical condition at the time of the examination than she had been before.

This selectee voluntarily made his wife a dependent by marrying her at a time when he knew or felt that he was going to be placed in Class 1-A. No explanation has been made by him as to how his mother is going to be maintained, which was highly significant in view of the fact that his questionnaire indicated that she was dependent upon him. The entire atmosphere surrounding this selectee's case record is most suspicious. The testimony relative to an engagement party at home in September, 1940; and to his keeping company with his then fiancee two years prior to the formal engagement was questionable, especially in view of his statement that "She had a spot on her lung and probably had tuberculosis".

█ The local board was justified in its conclusion that this was a so-called "evasion marriage" and entered into solely to avoid service under the Selective Training and Service Act of 1940. Such action must be severely condemned in justice to all those who have registered under this Act.

█ Application of Greenberg, D.C., 39 F.Supp. 13, a decision by District Judge Forman of New Jersey on May 26, 1941, is cited in support of the selectee's contention. Greenberg was engaged to be married and actually married before induction into service. In his questionnaire, he stated his intention to marry because he was engaged. This was not considered an "evasion marriage". As yet, this case has not been reviewed. The conclusion reached in that case is not pertinent to the matter at hand. Each case must be determined on the facts presented and the inferences to be drawn therefrom.

As to the dependency of the wife of the selectee, Congress has defined the word "dependent" in Section 15(c), 50 U.S.C.A. Appendix, § 315(c), as follows: "The term 'dependent' when used with respect to a person registered under provisions of this Act includes only an individual (1) who is dependent in fact on such person for support in a reasonable manner, and (2) whose support in such a manner depends on income earned by such person in a business, occupation, or employment."

The regulations issued pursuant to the Act, in Section XXIII, Paragraph 355, sets forth a further definition of the word "dependent" which reads as follows:

"A person shall be considered a registrant's dependent only when all of the following conditions are satisfied:

"A. Such person must be either (1) the registrant's wife, divorced wife, child, parent, grandparent, brother or sister, or (2) a person under 18 years of age, or a person of any age who is physically or mentally handicapped, whose support the registrant has assumed in good faith.

"B. Such person must either be a United States citizen or live in the United States, its territories, or possessions.

"C. Such person, at the time the registrant is classified, must depend in fact for support in a reasonable manner, in view of such person's circumstances, on income earned by the registrant by his work in a business, occupation, or employment (including employment on work relief projects but excluding employment as an enrollee in the Civilian Conservation Corps and similar employment in the National Youth Administration.)

"D. Such person must in fact regularly receive from the registrant contributions (including payments to a divorced wife) to the support of such person and such contributions must not be merely a small part of such person's support. Even though the registrant is unable to furnish to such person money or other support for temporary periods because of the registrant's physical or economic situation, he may be considered to be regularly contributing to such person's support, if such person and the community look upon the registrant as the normal source of such person's support."

Another definition of the word "dependent" will be found in the Questionnaire, Series 7, reading as follows:

"The word 'dependent', as used in this series, means any person to whose support the registrant contributes more than merely a small part of such person's support (or to whose support the registrant would contribute were he not temporarily prevented from so doing by the registrant's physical or economic situation) who is either (a) the registrant's wife, divorced wife, parent, foster parent, or grandparent, or (b) the registrant's child, unborn child, brother, half-brother, sister, or half-sister, who is under 18 years of age or is physically or mentally handicapped.

"Only a person who is a United States Citizen or who lives in the United States or its Territories or possessions may be regarded as a dependent."

The situation evolving from the mass of confusing information given by the selectee seems to be that prior to February 23, 1941, the date of the marriage, the wife of the selectee, was not dependent upon him. The case record is utterly devoid of any evidence as to the means of her support or her ability to work before her marriage. The medical report has shown that there is no proof that she is unable to work now.

From the evidence before the Local Board it is indicative that the selectee has endeavored to have his wife's physician file a certificate to the effect that she was unable to work. In spite of the pressure used by the selectee, the doctor did not file such a report.

■ The entire matter has culminated into a situation not calculated to inspire confidence in the selectee's actions nor in his answers to the Board's questions. The selectee was given a very fair hearing. The action of the Local Board was within the scope of their authority and there was sufficient evidence before it to determine the status of the selectee. Placing the selectee in Class 1–A was just and proper. There can be no judicial review when the investigation has been fair and the findings supported by substantial evidence. The writ of habeas corpus is discharged.