BOITANO v. DISTRICT BOARD, NORTHERN DIST. NO. 3,
SACRAMENTO, CAL., et al.

(District Court, N. D. California, First Division. April 20, 1918.)

No. 16363.

1. ARMY AND NAVY ⬅️20—SELECTIVE SERVICE LAW—CLASSIFICATION OF REG-
ISTRANTS.

Under section 72, rule 5, of the presidential regulations for enforce-
ment of Selective Service Law May 18, 1917, c. 15, 40 Stat. 76, which
requires draft boards to scrutinize marriages by registrants made since
the passage of the act, to determine whether their primary purpose was
to evade military service, and authorizes them, "unless such is found
not to be the case," to disregard the relationship as a ground for de-
ferred classification, if the circumstances disclosed by the record are
such as to induce a belief that a marriage was contracted for such pur-
pose, the registrant must show that such was not the case.

2. ARMY AND NAVY ⬅️20—SELECTIVE SERVICE LAW—CLASSIFICATION OF REG-
ISTRANTS—REVIEW BY COURTS.

The decision of a district draft board as to the classification of regis-
trants, being made final by the act, is reviewable by the courts only
where the registrant has been denied a fair hearing, or the action of
the board was manifestly unfair.

Certiorari by Joseph Boitano against the District Board, Northern
District No. 3, Sacramento, Cal. Writ discharged.

E. B. D. Spagnoli, of Jackson, Cal., for petitioner.
John W. Preston, U. S. Atty., and Caspar A. Ornbaun, Asst. U. S.
Atty., both of San Francisco, Cal., for respondents.

DOOLING, District Judge. The proceedings sought to be reviewed
here are proceedings taken under the Selective Service Law. The local
board of Amador county, upon the return of petitioner's questionnaire,
which showed that he was a married man, with a dependent wife and
an unborn child, placed him in class IVa. Upon appeal by the govern-
ment, the district board placed him in class I, and in due time he was
directed to report for military service. He then applied to this court
for a writ of certiorari, which was issued, and a hearing was had upon
his petition and the return made thereto by the two boards. The record
shows that petitioner was married on June 27, 1917, after the pas-
sage of the act, and after the petitioner had registered thereunder pur-
suant to the proclamation of the President.

[1] It may be briefly noted, in passing, that the act gives to the
President the power to exclude and discharge from the selective draft,
among others, "those in a status with respect to persons dependent up-
on them for support which renders their exclusion or discharge ad-
visable." Section 4. The act also provides for the creation of local
and district boards, and declares that the decision of such district
boards shall be final, except that the President may modify or re-
verse the same. The President is also authorized by the act to
make rules and regulations governing the organization and procedure
of the local and district boards.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Pursuant to this authorization, a very elaborate course of procedure has been devised, and a large number of rules promulgated. Of these the ones bearing directly upon this proceeding are the following:

Section 76, rule IX: "In class IV shall be placed: (a) Any married registrant whose wife or children are mainly dependent on his labor for support."

Section 72, rule V: "On May 18, 1917, every person subject to registration had notice of his obligation to render military service to his country. The purpose of the Selective Service Law was not to suspend the institution of marriage among registrants, but boards should scrutinize marriages since May 18, 1917, and especially those hastily effected since that time, to determine whether the marriage relation was entered into with a primary view of evading military service, *and unless such is found not to be the case* boards are hereby authorized to disregard the relationship so established as a condition of dependency requiring deferred classification under these regulations."

The questionnaire showed nothing further than that the marriage was contracted June 27, 1917, that he was then 23 years and his wife 31 years of age, and the district board, so far from finding that it was not contracted with a primary view of evading military service, found that it was what the board designated a "war marriage," and reversed the action of the local board, which gave to petitioner the deferred classification.

The history of the case, as disclosed by the record, shows that the local board, which, in the small community, was more or less in touch with all the registrants, had itself twice before this, and on practically the same evidence, refused deferred classification and placed petitioner in class I. There was no evidence before the board at any time tending to show affirmatively that the marriage was not entered into with a primary view of evading military duty, and rule V, above quoted, seems to place upon the registrant, who has entered into the marriage relation since May 18, 1917, the burden of making such showing as will authorize the board to find that such marriage was not entered into with that view.

[2] The language of the rule is:

"And unless such is found not to be the case boards are authorized to disregard the relationship."

This does not mean that all marriages after May 18, 1917, shall be looked upon with suspicion, but, if any circumstances in the previous history of the case, as disclosed by the record, induce the belief in the minds of the board that a marriage under consideration was in fact what this board denominates a "war marriage," the registrant must show affirmatively that such was not the case.

The decision of the district board is made final by the act itself, and the courts can interfere with their action, if at all, only when the registrant has been denied a fair hearing, when he has not been given an opportunity to be heard at all, or when the action of the board is so manifestly unfair and unjust as to make it apparent that the rights of the registrant have been disregarded, and that he has been clearly wronged. And it may be said that, even if the court would have reached a different conclusion from the evidence if the case were presented to it in the

first instance, that fact cannot be held sufficient to warrant the court in holding that the hearing accorded the registrant by the district board was unfair.

Nothing appears in this record that would authorize the court to disturb the action of the district board, the finality of which is proclaimed and determined by the law itself. It was not intended that every dissatisfied registrant should find relief in the courts. Indeed, the Selective Service Law would be shorn of all its vigor and efficacy, were the courts to undertake to review the action of the local and district boards in any case where it does not clearly appear that such boards have abused the great powers conferred upon them.

The writ of certiorari is therefore discharged, and the order restraining the local and district boards from proceeding further with petitioner's induction into the service is set aside.