UNITED STATES ex rel. KOTZEN v. LOCAL EXEMPTION BOARD NO. 157 OF CITY OF NEW YORK et al.

(District Court, S. D. New York.  June 7, 1918.)

1. HABEAS CORPUS ⬡85(1)—DRAFT—EXEMPTION—ALIENS—BURDEN OF PROOF.

Although under section 79, rule 12, subd. F, Rules and Regulations of the Selective Service Act of May 18, 1917, a nondeclarant alien should be placed in class V–F, which exempts from service, in view of section 100, providing for correction of questionnaires, and section 101, enjoining local boards to satisfy themselves that a registrant claiming exemption as an alien is not a citizen, the burden of proof rests on complainant in habeas corpus to prove his alienage beyond a reasonable doubt.

2. ARMY AND NAVY ⬡20—DRAFT—EXEMPTION—HEARING—SUMMONS AS NOTICE TO PRODUCE FULL PROOF OF CLAIM.

Where a drafted person, claiming exemption from military service on the ground of alienage, is summoned before the exemption board under section 101 of Rules and Regulations of Selective Service, to testify on the exemption claim, the summons is notice to claimant to present all the evidence he has in support of his claim.

3. ARMY AND NAVY ⬡20—DRAFT—CLAIM OF EXEMPTION—REHEARING—DUTY OF DRAFT BOARD.

Where a drafted person claimed exemption from military service on the ground of alienage, and upon being summoned, under section 100, to prove his claim of exemption, failed to establish it, the duty to reopen the case rested in the sound discretion of the exemption board.

4. HABEAS CORPUS ⬡16—DRAFT—CLAIM OF EXEMPTION.

It is not the province of the United States District Court to pass judgment upon what constitutes sufficient evidence to satisfy exemption boards of the alienage of a registrant claiming exemption from military service, unless the board has acted arbitrarily or illegally.

Habeas corpus by the United States, on the relation of Max Kotzen, against the Chairman, Clerk, and Members of Local Exemption Board No. 157 for the City of New York, the Military Authorities of the United States, and any person having custody of the relator.  Writ dismissed.

Louis J. Gold, of New York City, for petitioner.

Julian Hartridge, Asst. U. S. Atty., of New York City, for Local Board No. 157 and the United States.

KNOX, District Judge.  In this case Max Kotzen, the relator, obtained a writ of habeas corpus for the purpose of being discharged from the military service of the United States, into which he had been inducted by Local Exemption Board 157 of the city of New York. The relator, being within the draft age, claimed upon his questionnaire to have been born in Russia on October 31, 1890, and to have come to this country in 1893 (approximately 25 years ago).  At the time of his arrival he was accompanied by his mother.  Nothing is said in the questionnaire as to his father, save that he answered "No" to question 8, series 7, namely, "Has either of your parents been naturalized in the United States?"  The relator likewise denied that he had ever voted in the United States, or that he had declared his intention to become a citizen of the United States.  In answer to other

questions the registrant declared that he did not want to fight for the United States or for his native country.

Manifestly, if the statements of the registrant that he is a non-declarant alien are true, he should, under subdivision F of rule 12, section 79, of the Rules and Regulations of the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 76), have been placed in class V–F. The local exemption board, however, placed the registrant in class I–A, summoned him for service, and duly inducted him into the military service of the United States.

[1] The question, therefore, for determination, is whether the registrant was properly classified, and, if he was not, his writ should be sustained. In order to arrive at the answer to the question now before the court, it is necessary to consider other sections of the Rules and Regulations governing the operation of the Selective Service Act, together with what was done subsequent to the filing of the relator's questionnaire. Among other things, section 100 provides:

"If, upon examination, the local board finds that a questionnaire does not contain the information required, or contains substantial or material errors which indicate ignorance or lack of knowledge on the part of the registrant, or in case the local board shall desire further information, the board shall require the registrant to appear at a day to be fixed and complete the questionnaire or correct any substantial or material error which may appear therein, or to furnish such other evidence as the board may require. Failure on the part of the registrant to appear on or before the day set by the local board shall remove the right of the registrant to correct, modify, or add to his questionnaire."

Under section 101 of the Rules and Regulations relating to the process governing the classification by local boards, there appears a note, part of which reads:

"Local boards are especially enjoined to scrutinize carefully any claim for exemption of a registrant on the ground of alienage, and, before classifying an alleged alien in class V, to satisfy themselves beyond reasonable doubt, that the registrant claiming such exemption is not a citizen of the United States and has not declared his intention to become a citizen."

It appears in the case before me that the board was not satisfied with the claim of alienage put forth by the registrant, inasmuch as some time prior to February 6, 1918, the local board directed a paper, in the nature of a subpœna, to be issued to the registrant; the purport of this paper being:

"You are hereby commanded to appear as a witness before the above-named board on the 6th day of February 1918, at 3 o'clock p. m., for the purpose of testifying in the matter of the claim for exemption or deferred classification, and not depart without leave of the board."

The registrant received this subpœna, and, in response thereto, went before the board, where he was questioned. A pencil memorandum was taken as to what transpired upon this occasion. That memorandum reads as follows:

"Is here 24 years. Was 3 years old when he arrived. Father here 25 years. Attended public school here. Does not know whether his father is a citizen. Never was with him all the time. Has no personal knowledge."

Thereafter the board decided against the claim of the registrant and placed him, as set forth above, in class I-A. Upon learning of his classification, the relator, upon February 11, 1918, took an appeal to the district board, and the local board sent to the district board a memorandum setting forth substantially the result of Kotzen's examination, with this addition:

"Registrant did not know whether his father was a citizen, and, the members of the board being of the opinion that his proof of alienage was insufficient, the claim was unanimously denied."

The district board likewise unanimously classified the registrant in class I-A, because it found that the alienage of the registrant was not proved to the satisfaction of the local board.

About March 16th, Kotzen took up with the attorney for the Provost Marshal General the matter of reopening his case, submitting a certificate of the Russian consul general at New York, which is to the effect that Kotzen had submitted to that office certain declarations from which it appears that he is a native and citizen of Russia. He also submitted the affidavit of a man named Sam B. Klitzner, in which Klitzner says from his own knowledge that he knows Kotzen is not a citizen of the United States, that he (Klitzner) had asked him to become a citizen, and that Kotzen had declined to do so. An affidavit was also submitted from another man, named Harris Brodofsky, who says that he knows that Kotzen is of Russian birth and never became a citizen of the United States, and that the affiant has discussed with Kotzen the possibility of making an application to become a citizen. Julius Kotzen, the father of Max Kotzen, also makes an affidavit in which he says he came to this country with the registrant about the year 1895, and that he knows of his own knowledge that Max Kotzen has never declared his intention to become a citizen of the United States, and that he (the father) is not a citizen of the United States.

The attorney for the Provost Marshal General forwarded these documents to the local board, without any recommendation as to the consideration to be given them. Written upon the letter of the attorney, in lead pencil, are the words "Application denied 3—19—18," which notation is followed by the initials "N. G.," which are the initials of Nathan Gordon, the chairman of the exemption board.

Upon this state of facts I was, upon the argument, inclined to believe that the relator was entitled to have his writ of habeas corpus sustained. I have since changed my mind, and have concluded that his writ must be dismissed. I base this decision upon the ground that the burden of establishing the relator's alienage rested upon him; that in view of his long residence in the United States, the tender age at which he came here, the absence of any proof as to whether or not his father had become a citizen, or, if his father had died, whether or not his mother had remarried a citizen of the United States prior to the majority of the relator, made it perfectly proper for the board to decline to be satisfied with the mere declaration, even though it was a sworn declaration, of the relator, that he was not a citizen of the United States, or was not a declarant.

[2] It seems to me that the note which follows section 101 of the Rules and Regulations governing the operation of the Selective Service Act establishes the degree of proof that is necessary in order for a registrant to obtain exemption, namely, that the board shall be satisfied of his assertions beyond a reasonable doubt. I am also of the opinion that, when Kotzen was called before the board for the purpose of testifying in the matter of his claim for exemption, that was in effect a notice to him that the issue of his claim of exemption was to be tried, and thereby a notice to him to present all the evidence he possessed as to the facts claimed by him. It would follow that his failure to produce proof which would convince the board beyond a reasonable doubt of his alienage justified the board in declining his request to be classified in class V. I have been of the opinion that perhaps it was the duty of the board to advise him that he was required to furnish further evidence, if it was not satisfied with the testimony of Kotzen. However, I do not now hold to this view.

[3, 4] As to the duty of the board to reopen the case, I hold it was in the sound discretion of the board whether or not it should be reopened. In the very nature of the operation of the local boards, guided by the provisions of the Selective Service Act, and its rules and regulations, it is necessary that they should have wide range of discretion, unless the work of these boards is to be seriously interfered with. It may be said that the board should have been satisfied with the proof of the relator, but I am of the opinion that it is not the province of this court to pass judgment upon what constituted sufficient evidence to satisfy the board of the alienage of this registrant. In other words, I am not prepared to say that the board here acted in such an arbitrary manner and with so little regard for its duties as to justify me in reaching the conclusion that its whole action is tainted with illegality.

The writ is dismissed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes