### Application of GREENBERG.
### Misc. No. 207a.

District Court, D. New Jersey.
May 26, 1941.

Edwin L. La Crosse, of New York City, for petitioner.

Charles M. Phillips, U. S. Atty., and Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., for respondent Lt. Col. Holmes T. G. Paullin.

FORMAN, District Judge.

The petitioner, Shirley Greenberg, has procured from this court a writ of habeas corpus directing Lt. Col. Holmes T. G. Paullin to produce Herbert Greenberg before this court for the purpose of inquiring into the cause of his detention and restraint. At the hearing upon the return the petition was amended, and it now alleges, among other things:

"That the cause or pretense of the imprisonment and restraint of said Herbert Greenberg * * * is that he was a registrant under the Selective Service Act, and that he was erroneously classified under the Class of I-A by the Selective Service Local Board No. 46, East 196th Street and Bainbridge Avenue, Borough of Bronx, City of New York, and that said classification was erroneously affirmed by the Appeal Board No. 25, located at 100 West 42nd Street, Borough of Manhattan, City of New York, which Appeal Board had jurisdiction of said Selective Draft Board; and said registrant further alleges that he was entitled to be classified under Class 3-A by reason of the fact that petitioner, his wife, was entirely dependent upon him for support at the time of said classification.

"That the imprisonment and restraint of said Herbert Greenberg is illegal in that he should be entitled to a deferred classification and under such classification he would not be called for Selective Service for a considerable period of time, and that the said Selective Draft Board No. 122, of New York City, acted in an arbitrary and capricious manner and contrary to the law,

'and their decision was an abuse of the discretion committed to them by the statute.".

In December, 1939 the petitioner and Herbert Greenberg became engaged, the date for the wedding being set for January 4, 1941. This date was selected because it marked the fiftieth wedding anniversary of Greenberg's grandparents and the twenty-fifth wedding anniversary of his immediate parents.

Following the enactment of the Selective Training & Service Act of 1940, 50 U.S. C.A.Appendix § 301 et seq. (approved September 16, 1940), Greenberg, pursuant to the Regulations promulgated, filed with his Local Board on November 20, 1940, a questionnaire indicating that he was the general manager of New Hub Cleaners, Inc., that his income from the business was $35 a week, that he had no dependents, but added: "I am getting married in early part of January, and am already saving money along with future wife for opening of home."

Greenberg was notified to report for physical examination on January 6, 1941, but upon his request he was examined on January 3, 1941. He was married the following day, and on January 7, 1941, the Local Board placed him in Class I–A. He appealed from the classification to the Board of Appeal which sustained the conclusion of the Local Board. He was inducted into the Army, and his wife Shirley Greenberg now seeks relief in his behalf from this court.

The Selective Service Regulations provide as follows: "a. In Class III (the deferment claimed by Greenberg) shall be placed any registrant upon whom one or more dependents, as defined in paragraph 355, depend for support in a reasonable manner." Volume 3, Section XXIII, Paragraph 354.

The Regulations specifically include a wife within the definition of a dependent and provide that: "c. Such person, at the time the registrant is classified, must depend in fact for support in a reasonable manner * * * on income earned by the registrant * * *." Volume 3, Section XXIII, Paragraph 355 (italics supplied).

Our problem for determination is whether the Local Board and the Board of Appeal acted arbitrarily in refusing to recognize the dependency of Shirley Greenberg "at the time the registrant is [was] classified"

in which case relief may be had in this court. United States ex rel. Fred Filomio v. Powell, D.C., 38 F.Supp. 183.

Joseph F. Addonizio, Chairman of the Local Board, sought to justify the Board's determination on the ground that the petitioner would suffer no hardship. This was based upon two grounds: First, Greenberg had a one-third interest in New Hub Cleaners, Inc., and his income would continue therefrom irrespective of induction; secondly, the petitioner had been living with her family until her recent marriage, and could return. Accordingly, the Board concluded that Greenberg was a man of substance, and the question of dependency did not enter the case. In addition, the Local Board felt justified in ignoring the marriage, because (1) Greenberg was single when his questionnaire was filed, and (2) the marriage did not occur until after the physical examination on January 3, 1941, at which time Greenberg might well have contemplated induction.

Samuel Wolchok, Chairman of the Appeal Board, sought to justify his vote for an affirmance of the Local Board as follows:

"I based my answer on the following— that he was not drafted while he was married; he was drafted while he was single". (The witness testified that it was his impression that Greenberg was classified in Class I-A on December 3, 1940.)

"Mrs. Greenberg did not work for a year and a half prior to her marriage and did not intend to work after that either, and, therefore, we thought that we were not creating a hardship on Mrs. Greenberg."

In addition, we have a letter from Chairman Wolchok to George Goodstein, Government Appeal Agent for the Local Board, expressing the view of the Appeal Board—"With all due respect to your comment that this appellant did not marry in order to evade the draft law, we sincerely think that when a man marries during the time when he knows he is very shortly to be drafted, he undertakes this step with the feeling that either his wife would be able to take care of herself or else that he can support her on previously accumulated income."

The questionnaire introduced into evidence indicates that the Local Board placed Greenberg in Class I on December 3, 1940, and following his physical examination on January 3, 1941, he was placed in Class I–A on January 7, 1941.

The government contends that December 3, 1940, is the date of classification, while petitioner contends January 3, 1941, is the date of classification. These dates are important because the disposition of this case depends upon whether or not the petitioner was a dependent "at the time the registrant is [was] classified."

Under the regulations there are four general classifications, Classes I, II, III, and IV. Volume 3, Section XVIII, paragraph 327. Class I is divided into Subclasses I–A, I–B, I–C, I–D and I–E. Volume 3, Section XVIII, paragraph 328. A registrant cannot be placed in Class I–A until after he is found fit for general military service, or until after his physical examination. Volume 3, Section XVIII, paragraphs 330 and 331; Volume 3, Section XXI, paragraph 342. It is also provided that the registrant shall receive a notice of classification, Volume 3, Section XVIII, paragraph 332, and he is entitled to appeal within five days from that date pursuant to Volume 3, Section XXVII, paragraph 371.

We conclude that Greenberg was not classified until January 7, 1941, and that the action of the Local Board on December 3, 1940, is immaterial herein. This conclusion is consistent with the Board's failure to give notice of classification as of December 3, 1940, which in turn conflicts with its own opinion that classification was perfected on that date. Accordingly, classification is governed by circumstances existing on January 7, 1941.

There remains for determination whether or not the petitioner depended on January 7, 1941, in fact for support on the income earned by her husband. The Local Board disposed of the item of dependency on the grounds that Greenberg's income would continue and because the petitioner could return to her family. The Appeal Board disregarded any question of dependency existing on January 7, 1941, because it thought classification was effected December 3, 1940.

There was no evidence to support the Local Board's conclusion that Greenberg's income would continue. On the contrary the evidence indicated that he realized no income from his investment in the cleaning business, but only a salary of $35 a week or $1,820 per annum based upon his services. Actually, the only evidence before the Board indicated that his investment in the business amounted to about $1,000. The evidence does not disclose that the petitioner has an independent income; it does reveal that her husband's induction would force her to abandon an apartment in which she and her husband were living. Thus, the only alternative would be the return of the petitioner to her parents, and of this the Local Board was cognizant.

■ Manifestly, the Selective Service Act neither contemplates a disruption of domestic life nor a moratorium on marriages occurring after its enactment. Congress was careful in expressing its intent in this respect because it is provided:

"This [classification] should be accomplished so as to give equal and fair justice to all". Volume 3, Section XVIII, paragraph 326, Selective Service Regulations.

\* \* \* \* \*

"b. The local board should determine all questions of Class III deferments with sympathetic regard for the registrant and his dependents. Any reasonable doubts in connection with dependency should be resolved in favor of deferment, and in doubtful cases the local board should be mindful of injuries which may be expected to result from separating a father from his children or a husband from his wife. The maintenance of the family as a unit is of importance to the national well-being." Volume 3, Section XXIII, paragraph 354, Selective Service Regulations.

In the case of Boitano v. District Board, D.C., 250 F. 812, 813, the petitioner had married on June 27, 1917, following the enactment of the Selective Service Law of May 18, 1917, 50 U.S.C.A.Appendix § 201 et seq. The District Board reversed the Local Board's classification, and refused to consider the marriage because it was effected after May 18, 1917. The court expressed its inability to substitute its opinion for that of the District Board, but pointed out the following relevant rule under the Act of 1917:

"Section 76, rule IX: 'In class IV shall be placed: (a) Any married registrant whose wife or children are mainly dependent on his labor for support.'

"Section 72, rule V: 'On May 18, 1917, every person subject to registration had notice of his obligation to render military service to his country. The purpose of the Selective Service Law was not to suspend the institution of marriage among registrants, but boards should scrutinize marriages since May 18, 1917, and especially those hastily effected since that time, to determine whether the marriage relation was

entered into with a primary view of evading military service, *and unless such is found not to be the case* boards are hereby authorized to disregard the relationship so established as a condition of dependency requiring deferred classification under these regulations.' "

It stated: "This does not mean that all marriages after May 18, 1917, shall be looked upon with suspicion, but, if any circumstances in the previous history of the case, as disclosed by the record, induce the relief in the minds of the board that a marriage under consideration was in fact what this board denominates a 'war marriage,' the registrant must show affirmatively that such was not the case". 250 F. 812, 813.

■ We do not have a specific provision in the Selective Service Act of 1940 or the Regulations as in the Act of 1917 with reference to marriages occurring after its enactment. The present act does not create any cloud of suspicion upon marriages occurring after September 16, 1940, or even after the filing of the questionnaire, because the circumstance of a registrant on the date of classification are controlling. This liberality does not mean, however, that "war marriages" may not be disregarded in a proper case. Herein there is not a scintilla of evidence indicating that Greenberg was motivated by an attempt to evade service. We have conclusive testimony that he became engaged to the petitioner as early as December, 1939, and in addition the wedding date at that time was set for January 4, 1941. He presented to the Local Board evidence of this in the form of a printed invitation to the combined celebrations of the anniversaries and wedding. He also presented to the Board insurance policies issued as early as December 16, 1939, covering the engagement ring he had given to the petitioner. Correspondence between the petitioner and Greenberg of the nature usually passing between engaged couples was offered to the Board as well as affidavits of persons who swore that they knew that the couple had become engaged in December, 1939, and at that time their wedding date had been determined to be January 4, 1941. Under these circumstances the fact that he was married when he knew he would report for his physical examination the following day is immaterial.

We conclude that the Local Board and the Board of Appeal acted arbitrarily in their failure to conclude that the petitioner was a bona fide dependent upon Greenberg on the date of classification.