### UNITED STATES ex rel. ALVES v. GEESEN, Commanding Officer, et al.

#### Civil Action No. 5143.

District Court, N. D. California, N. D.

March 27, 1945.

N. Lindsay South of Fresno, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., and Emmet J. Seawell, Asst. U. S. Atty., of Sacramento, Cal., for respondent.

WELSH, District Judge.

Petitioner herein, the father of Manuel Louis Alves, a registrant under the Selective Service Act of 1940, 50 U.S.C.A.Appendix § 301 et seq., seeks his son's release from the United States Army. It is recited in the petition for a writ of habeas corpus that said registrant is unlawfully restrained of his liberty by the Commanding Officer at Camp Beale, Yuba County, California.

The alleged illegality of the restraint is that said Manuel Louis Alves registered with Local Board No. 123, Fresno, California, and was classified in Class I–A, which classification was affirmed by the Appeal Board having jurisdiction of such matters, whereas said registrant was entitled to be classified under Class II–C by reason of the fact that he was regularly engaged in essential farm work. Petitioner alleges that he owns and operates a dairy in connection with which he has been unable to replace said registrant, that he filed proof with the Selective Service Board, on Form 42–A, but that said board acted in an arbitrary and capricious manner in connection with the matter and inducted said registrant into the Armed Forces.

Petitioner's claim is grounded on the Tydings Amendment to the Selective Training and Service Act, 50 U.S.C.A.Appendix § 305, subdivision (k), which reads in part —"Every registrant found by a selective service local board, subject to appeal in accordance with section 10(a) (2) (section 310(a) (2)) to be necessary to and regularly engaged in an agricultural occupation or endeavor essential to the war effort, shall be deferred from training and service in the land and naval forces so long as he remains so engaged and until such time as a satisfactory replacement can be obtained."

Brigadier General Oscar Abbott, Army of the United States, Commanding General, in a return to the order to show cause herein, shows: That the said registrant regularly executed the required questionnaire which stated that he was employed "milking cows, dairy farmer"; that the principal crops on the farm where he worked were alfalfa, 100 acres; pasture, 300 acres; that the number of people who worked on the farm was seven of whom six were hired hands. The minutes of the local board show that registrant was placed in Class II–B on October 14, 1942, that he was

reclassified in II–C on May 29, 1943. Registrant's case was re-opened by the local draft board June 6, 1943, and on June 19, 1943, the board decided that his classification should remain the same. On August 30, 1944, registrant was reclassified in Class I–A. Prior thereto, the local United States Department of Agriculture War Board certified that it had investigated the case and did not recommend deferment on the ground of agricultural occupation. On November 2, 1944, the United States Department of Agriculture War Board again found that the registrant was not necessary in an agricultural occupation. An appeal was filed, and on consideration thereof the Board of Appeal, by a vote of 4 to 0, voted to continue the registrant in Class I–A. On January 30, 1945, the registrant executed a "Request for Immediate Induction" whereby he expressed a desire to be immediately inducted into any branch of the armed forces of the United States and waived and released "any and all rights, notices and remedies, which I may now have, or be hereafter entitled to under the provisions or rules and regulations of the Selective Training and Service Act of 1940."

Original records of the boards referred to in the return were annexed thereto and introduced in evidence at the hearing on the order to show cause. The letter of November 2, 1944, from the Fresno County United States Department of Agriculture War Board to the local board, reads: "The case of the above mentioned registrant has been reopened on appeal and reconsidered by this Board. The Fresno County USDA War Board sustained their former recommendation of no deferment. Their decision was based on the fact that there are several brothers in the family. It would seem they could consolidate their work so that some of them would be available to help the father, and release the registrant from farm work for military service. Action was unanimous."

Another exhibit shows that there are five brothers ranging in age from twenty-eight to thirty-five, all engaged in dairying in the vicinity, and that the farm owned by the father comprised 80 acres on which he had 28 milk cows, 8 dry cows and 48 calves and heifers.

Petitioner's counsel in his brief quotes the Tydings Amendment. He underlines certain portions thereof, to-wit: the words "every" and "engaged in an agricultural occupation" "shall," "so long as he" "said replacement."

The portion of said Amendment herein involved, however, begins with these words —"Every registrant found by a selective service local board * * * to be necessary to and regularly engaged in an agricultural occupation * * *."

■ This Court believes that emphasis should be placed upon the words "found by a Selective Service Local Board." Congress, by the use of these words, made it indispensable that the Selective Service Board find a registrant necessary to an agricultural occupation before any deferment could be granted such registrant.

■ Petitioner's counsel misconceived the purpose of the Tydings Amendment when he says: "It will be observed that the law says every registrant (not such as a draft board may see fit), the language is also mandatory as it provides 'shall be deferred' and further satisfactory replacement." If the statute were to be interpreted and applied as so contended, the Local Boards would have no alternative, once a registrant were proved to be "engaged in an agricultural occupation or endeavor essential to the war effort." Such, necessarily, could not have been the intention of Congress in enacting the Tydings. Amendment. Its use of the phrase "found by a selective service local board" indicates that every local board was to be vested with power and discretion to hear and determine each case upon its merits.

Counsel for petitioner cites Arbitman v. Woodside, 4 Cir., 258 F. 441, 443. True, the Circuit Court of Appeals reversed the District Court which had dismissed an application for a writ of habeas corpus. It did so, however, because "the rejection of petitioner's claim was arbitrary and unfair. It meant the refusal to investigate his claim and proofs on their own merits, merely because other claims for exemption had been supported by false affidavits."

■ The opinion, however, recognized: "The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the findings supported by substantial evidence * * *."

Counsel also cites United States ex rel. Filomio v. Powell, D.C., 38 F.Supp. 183, 191. Petitioner therein had been classified

in I-A on the basis that his sister was working and able in part to contribute to the support of the petitioner's father and mother. Subsequently said sister lost her position and petitioner filed a request for reclassification on the ground of dependency. The local board declined to reclassify him and petitioner endeavored to appeal by a letter, but the local board declined to transmit his folder to the Appeal Board or to reclassify. It did not appear that a formal hearing was had.

The Court found that four "irregularities characterized the conduct of this Local Board" but held that none of them was "such as to give the court the right to intrude or substitute its judgment for that of the Local Board under the type of proceedings brought by this petitioner."

Said Court quoted with approval United States ex rel. Pascher v. Kinkead, D.C., 248 F. 141, affirmed, 3 Cir., 250 F. 692: "It may be considered as settled beyond all question that Congress may make the decisions of the executive departments or subordinate officials thereof, to whom it has committed the execution of acts similar in their general nature to this, final on questions of fact which arise in administering such acts; and, when it has done so, the courts may disturb such decisions only when it appears that the party involved has not been afforded a full and fair hearing, or that the executive officers have acted contrary to law, or have manifestly abused the discretion committed to them by the statute."

It was not shown herein that the registrant had not been afforded a full and fair hearing, that any of the boards acted contrary to law, or that they abused the discretion committed to them by the Selective Training and Service Act.

One of the rare instances of release from the Armed Forces by writ of habeas corpus was Application of Greenberg, D.C., 39 F.Supp. 13. Said decision has been criticized in law reviews. In 30 California Law Review, 226, it was said: "The decision of the court in this matter could be questioned on the ground that the courts should give great weight to the judgment of the administrative board. * * * It is not surprising, therefore, that in United States ex rel. Errichetti v. Baird, D.C., 39 F.Supp. 388, a District Court refused to follow the holding of the court in the Greenberg case and sustained a local

board's ruling that a wife was not a dependent if she was capable of self-support."

In 10 George Washington Law Review, 828, 841, J. Robert Bullock, author of the article, commented: "Bearing in mind the nature of the alleged right of which the selectee who is wrongfully classified claims to be deprived, the necessity for showing independently that the hearing provided for in the Regulations was denied, and the proper function of the court in the event it so finds, the error of the court in the Greenberg case becomes apparent."

Said author ably reviews the functions of the courts in relation to Selective Service board classifications. Some of his statements pertinent to the situations such as the one considered herein are:

"The classes of persons who are not ultimately required to render military service have no constitutional rights to be placed in deferred classes, but merely statutory privileges. * * * It was not the intention of Congress to give an individual within any group a right to deferment enforceable by the courts, regardless of how arbitrary the boards might be in any individual case. The deferment provisions in the statute were intended for the protection of the national health, safety and interest, and not for the benefit of individuals. (P. 833)"

"If it appears that all the proper evidence offered to the appeal board was accepted and considered there is no basis for court action. A court may be of the opinion that a given board was wrong, but it is precluded by law from offering a remedy. (P. 838)"

"So long as an opportunity to present evidence was given to those entitled to present it under the Regulations, the appraisal of the evidence with respect to its weight and service was for the boards and not for the courts. (P. 843)"

In 36 Illinois Law Review, 310, 316, it is pointed out that the burden is on the registrant to establish his alleged cause for deferment. This court is convinced that the petitioner herein has not sustained that burden.

Finality of decisions of draft boards on questions of fact which arise in administering their duties is amply sustained by authorities cited in 147 A.L.R. 1313, 1319. It is there stated that courts may not dis-

turb such decisions unless it appears that the parties involved have not been afforded a full and fair hearing, or that the executive officers have acted contrary to law or have manifestly abused their discretion committed to them by the statutes.

The reticence of the judicial branch of the government to interfere with the processes of the executive is evidenced by the fact that in only three cases involving classification under the Act of 1917, 50 U.S.C.A.Appendix § 201 et seq., were releases from the army ordered: Ex parte Beck, D.C., 245 F. 967; Ex parte Cohen, D.C., 254 F. 711; and Arbitman v. Woodside, 4 Cir., 258 F. 441.

Professors Charles W. Taintor and A. B. Butts state in 14 Mississippi Law Journal, 445, 476: "The very paucity of cases arising under the 1940 Act which have involved contentions that the boards have acted arbitrarily—we have found only six such cases—offers eloquent testimony to the sincerity and success of the boards to act fairly."

The Second Report of the Provost Marshal General on the 1917 Act, pages 276 to 290, shows that to effectuate the ideal of localizing the draft, its administration was placed in the hands of men intimately acquainted with the lives and circumstances of the people of their communities and that an intimate knowledge and appreciation of all varities of local conditions being necessary, these representative men, having different careers and experiences, were made judges of the equities of the law in its application to their neighbors.

The United States Attorney says in respondent's brief that local boards rely on common knowledge in the community as to their decisions for occupational or agricultural deferment; the local board had before it all the facts and conditions with relation to the question of whether a satisfactory replacement could be secured for the registrant; and it concluded that such replacement was possible.

Cases cited by respondent include the following: United States ex rel. Kotzen v. Local Exemption Board No. 157 of City of New York, D.C., 252 F. 245, 248: "It is not the province of this court to pass judgment upon what constituted sufficient evidence." Shimola v. Local Board, D.C., 40 F.Supp. 808, 810: "The Courts will not substitute their judgment for the judgment of administrative officers exercised within the grant of their authority." Harris v. Ross, 5 Cir., 146 F.2d 355, 358: " * * * The local board did have the power and the obligation to determine whether or not the petitioner here was, in fact, a regular minister of religion. * * * It may act on matters within the knowledge of the Board whether in evidence or not."

In United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, 947, it was indicated that substantial evidence need not necessarily appear, but that it is sufficient if "there is any evidence at all to support the findings of the local boards."

In Hauck v. Hoyl, D.C., 51 F.Supp. 1005, 1007, the Honorable A. F. St. Sure considered an alleged arbitrary and capricious action of a local board in refusing to defer a petitioner engaged in an agricultural occupation. He found that facts were exhibited by the record wherefrom it appeared that the investigation and proceedings of the local board were fair and that its findings were supported by substantial evidence. The learned Judge pointed out that the discretion to determine whether certain classes of registrants should be exempted or deferred is reposed by the Act in the President and the boards or agencies which he is further authorized to create for the purpose of administering the Act, and cited authorities for the rule: "It is only when it appears on the face of the record that the action of the Local Board infringed the constitutional rights of the inductee that the courts have the right to interfere, for draft boards are administrative agencies not subject to review by the courts."

That rule is applicable here. This Court accordingly is constrained to say, as was said in Boitano v. District Board, D.C., 250 F. 812, 813, that nothing appears in this record that would authorize the court to disturb the action of the boards, the finality of which is proclaimed and determined by the law itself.

Inasmuch as the registrant was legally inducted, the order to show cause is dismissed, and the petition for writ of habeas corpus is denied.