LEHTO v. SCOTT, Major General.

(District Court, E. D. New York.　May 11, 1918.)

ARMY AND NAVY ⚙20—DRAFT OF NONDECLARANT ALIENS.

　　The courts will not release a nondeclarant alien, who by reason of his lack of understanding of English fails to comply with the draft law; Congress having plainly intimated therein that it will use those who are willing and those who do not comply with the statute in obtaining a discharge.

Application for habeas corpus by Arvo A. Lehto to obtain his discharge from the command of Hugh L. Scott, Major General, Commander of the 77th Division, U. S. A., at Camp Upton, N. Y.　Petition dismissed, and relator remanded.

John G. Annala, of Fitchburg, Mass., for petitioner.
Melville J. France, U. S. Atty., of Brooklyn, N. Y., for defendant.

CHATFIELD, District Judge.　The applicant was drafted into the army in Massachusetts and has been transferred to Camp Upton, where he has applied for a writ of habeas corpus.　It appears that he registered at Prescott, Mass., but left for Maine in order to engage in work in that state, leaving no new address, and therefore failed to receive the notices to appear for examination.　Subsequently he returned and endeavored with diligence to submit himself for examination.　In order to claim exemption, he sought to prove that he had not intentionally evaded his call under the Selective Draft Law (Act May 18, 1917, c. 15, 40 Stat. 76).　He is a nondeclarant alien, and claims that his default in demanding exemption or discharge from the original call should not be enforced against him, even though admitted, inasmuch as he did not intend to default, and inasmuch as his mistake may be attributed to his lack of understanding of English.　In other words, the applicant wishes the court to believe that he would not have gone to Maine and failed to leave an address, if he had better understood the English language.

But a person who wished to avoid the draft might thus disappear. He might succeed in obtaining an acquittal, if indicted, unless it could be shown that he had knowledge of the law which he evaded.　This would not be the usual case, where ignorance of the law could not be urged as an excuse.　But the selective portion of the Draft Law is not worded like a statute defining a crime.　The Draft Law in effect gives the military authorities the right to take for service every registered person in the United States who does not claim exemption or secure discharge according to the machinery of the Draft Law itself.　It does in fact disavow, in section 2, the general purpose of impressing nondeclarant aliens into service; but in the succeeding sections Congress has plainly intimated that it will use nondeclarant aliens who are willing, and also those who do not comply with the statute in obtaining discharge.

Under these circumstances the courts have nothing to do with the release of a person who has failed to comply with the Draft Law and

hence is in the army, whether his desire to be released is the result of a change of opinion, or the result of unintentional failure on his part to present his application for release in proper form.

There is nothing shown in the record which would justify a finding that the board did not give the applicant a fair hearing, or that a rehearing was denied him without reason therefor.

Petition dismissed, and relator remanded.