**Petition of KAZUICHI TSUJI.**
**No. 104546.**

United States District Court,
N. D. California, S. D.

Dec. 28, 1953.

---

Victor S. Abe, San Francisco, Cal., Wayne Kanemoto, San Jose, Cal., Mas Yonemura, Oakland, Cal., for petitioner.

Edward J. Ennis, New York City, for Japanese American Citizens League, as amicus curiae.

GOODMAN, District Judge.

Kazuichi Tsuji's petition for naturalization presents the question whether Section 315 of the Immigration and Nationality Act of 1952, which provides "any alien who applies or *has applied*

for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States", makes petitioner ineligible for citizenship.

The petitioner is an alien of Japanese nationality, born in Japan on March 28, 1900. He lawfully entered the United States for permanent residence on March 24, 1916 and has since been continuously a lawful resident of the United States.

Until the effective date of the Immigration and Nationality Act of 1952 he has been racially ineligible for citizenship.[1] The racial barriers as to him were lifted by the Act of 1952.[2] He now has an American-born son, serving in the United States Air Forces.

On September 12, 1918, he was a farm worker at Santa Paula, Ventura County, California, then being 18 years of age. On that day he registered under the Selective Service Law of 1917, as amended.[3] His registration card showed him to be single, a farm laborer, of the Oriental race and a non-declarant alien of Japanese nationality.

The only further record available from the National Archives is the classification list of the petitioner's draft board, showing that he was placed in Class Vf by the local board. The Regulations[4] provided that non-declarant resident aliens (not enemy) should be placed in Class Vf. No other evidence concerning the classification of the petitioner is available, as all questionnaires filed by registrants under the Selective Service Law of 1917, as amended, have been destroyed by Congressional authorization.[5]

It is the contention of the Designated Naturalization Examiner that the record of such classification raises a presumption that the petitioner "applied" for exemption as an alien and that such presumption is sufficient to warrant the denial of the petition, absent any evidence to the contrary.

The petitioner tenders a twofold contention:

1. That no presumption follows from the classification record itself that the petitioner "applied" for exemption; and

2. That Section 315 of the 1952 Act is not applicable to non-declarant aliens who registered under the 1917 Selective Service Act.

It is agreed, and indeed no question has been raised, that unless Section 315 debars petitioner, he is otherwise eligible and qualified for American citizenship.

■ At the outset, it must be kept in mind that the burden of proving eligibility for citizenship rests upon the applicant. That burden never shifts to the United States.[6] Hence the burden or obligation is upon the petitioner to

---

1. § 303 of the Nationality Act of 1940; 54 Stat. 1140.

2. § 311 of the Immigration and Nationality Act of 1952; 66 Stat. 239; 8 U.S.C.A. 1422.

3. Act of May 18, 1917, 40 Stat. 76, as amended by the Act of August 31, 1918, 40 Stat. 955.

4. Sec. 79, Rule XII of the Regulations prescribed by President Wilson, Nov. 8, 1917 provided:
"In class V shall be placed any registrant found to be
* * * * * * *
(f) A resident alien (not an alien enemy) who has not declared his intention to become a citizen of the United States unless such non-declarant has stated in answer to question No. 2 of series VII of his Questionnaire that he does not claim exemption on the ground of his alienage, in which case he shall be classified as though he were a citizen of the United States."

5. 44 U.S.C.A. §§ 366-380.

6. Tutun v. U. S., 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738; U. S. v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; U. S. v. Schwimmer, 279 U.S. 644, 49 S. Ct. 448, 73 L.Ed. 889; In re Laws, D.C., 59 F.Supp. 179; Petition of Hoo, D.C., 63 F.Supp. 439; In re McNeil, D.C., 14 F.Supp. 394.

show that he is not debarred from naturalization by the provisions of Section 315 of the 1952 Immigration and Nationality Act.

I am convinced that the petitioner has sustained this burden of proof.

**1.**

■ The claim of the Naturalization Examiner that the record showing that the petitioner was classified as Vf, is presumptive evidence that he "applied" for such classification, is not sustainable either in fact or in law. The testimony of petitioner, set out in the record, is that he has no recollection of signing any form or document with respect to exemption from military duty in 1918 and that he only recalls signing one document, namely, his registration certificate.

The Act of May 18, 1917, 40 Stat. 76, as amended by the Act of August 31, 1918, 40 Stat. 955, declared the liability "to military service of all male citizens *and male persons* residing in the United States, not alien enemies, *who have declared their intention to become citizens,* between the ages of eighteen and forty-five, both inclusive".

Since non-declarant aliens were not among those declared in the statute to be liable "to military service", the logical conclusion is that the 1917 Act exempted them. The regulations prescribed by the President, pursuant to the 1917 Act, provided that "in Class Vf shall be placed any registrant found to be * * * a resident alien, not an enemy alien, who has not declared his intention to become a citizen of the United States, unless such non-declarant has stated in answer to question No. 2 of series VII of his questionnaire that he does not claim exemption on the ground of his alienage, in which case he shall be classified as though he were a citizen of the United States." (See note 4.) Thus, under the law and the regulations, non-declarant aliens had to be placed in the exempt classification Vf,

as not being subject to military duty, unless such non-declarants expressly waived in writing the exemption from the service granted by Congress under the terms of the Act.

Such being the case, the assumption that the classification is presumptive evidence of *"application"* by the registrant for exemption cannot be sustained. For such an assumption is contrary to the precise provisions of the statute and the regulations issued pursuant thereto.

■ Consequently, it follows that evidence that the petitioner was a non-declarant alien, not an enemy alien, was sufficient to warrant his exempt classification *without the need of any "application" for such exempt status.* Indeed the regulations made it the duty of the local draft boards to so classify a non-declarant alien, not an enemy alien,[7] unless there was a waiver in writing by the registrant of his right to the exempt classification. The only affirmative act required of such an alien, was to *waive,* if he wanted to serve, not to "apply" for any exemption.

Despite the clarity of the provisions of the statute and regulations in this regard, there was apparently some confusion in 1917 and 1918 among the various draft boards as to whether or not they should classify non-declarant aliens in the exempt classification Vf without some claim or statement to that effect in the questionnaire to be filed by the registrant. Inquiries concerning this problem, were made at the time to the Provost Marshal General of the United States, who, under the 1917 statute, was the Director of the Selective Service Act. Petitioner has offered in evidence exhibits 1 to 6 inclusive, which consist of correspondence upon this subject between the Governor of the State of Massachusetts, who was the State Director of Selective Service for Massachusetts, and the Provost Marshal. The Provost Marshal in this correspondence states that if the draft boards were satisfied beyond a reasonable doubt that a regis-

7. See note a.

trant was a non-declarant alien, not an enemy alien, the board should place such person in the exempt Vf classification, irrespective of whether or not a questionnaire was filed.

■ The Examiner objected to the admissibility of this correspondence, obtained from the Archives, on the ground of its alleged immateriality. I reserved ruling on the objection. The objection is now overruled and the exhibits are admitted for the reason that the objection made, in my opinion, goes to the evidentiary weight of these records rather than to their admissibility.

The exhibits are not really needed for a just determination of the issue, for the reason, as before stated, that the statute and regulations make it clear that there was no requirement for an "application" by the registrant for exemption. But the exhibits do demonstrate the invalidity of the argument that a presumption arises by virtue of the classification, that the registrant "applied" for exemption. These exhibits serve to indicate that it is impossible to say, since the records are destroyed, whether classifications by any particular draft board of non-declarant aliens were made *with* or *without* a claim being asserted in any questionnaire.

Such classification could have been made upon the basis of evidence either in or without the questionnaire. The registration card of the petitioner shows on its face that he was a non-declarant alien of Japanese ancestry. This alone was sufficient, if accepted as true by the Draft Board, to warrant classifying petitioner in Vf.

In my opinion, the cases cited[8] by the Designated Examiner, do not sustain his contention that non-declarant aliens were not exempted by the provisions of the 1917 Act, but were only

exempted if they claimed exemption, as provided in the Regulations. It is obvious that the 1917 Act did specifically exempt them. All that the cited cases hold is that non-declarant aliens and enemy aliens, being required to register under the Act, had thereafter to comply with the regulations, issued pursuant to the Act, in order to have their proper status recognized and recorded by the Draft Boards.

■ It is my conclusion that, assuming the applicability of Section 315 of the 1952 Act, there is no evidence, presumptive or otherwise, to show that the petitioner "applied" for exemption from military service.

### 2.

■ The main question of law posed by the petition here is whether or not Section 315 of the 1952 Act is applicable at all to non-declarant aliens who were not subject to military service under the Selective Service Law of 1917, as amended. Necessarily the resolution of this question is dependent upon whether the Congress intended Section 315 to apply to non-declarant aliens not subject to service under the 1917 Selective Service Act.

A study of the Congressional proceedings and the history of the various Selective Service Acts, in my opinion, clearly warrants the conclusion that the Congress never intended, by § 315, to bar from naturalization, non-declarant aliens, whom it had never *subjected* to service or duty.

The difference between the 1940 and 1948 Selective Service Acts, on the one hand, and the 1917 Act, on the other, makes this abundantly evident and clear. The provisions of the 1940 and 1948 Acts subjected non-declarant aliens to military service unless such aliens individually applied for exemption;[9] and

---

8. Among the cases cited, see U. S. ex rel. Koopowitz v. Finley, D.C., 245 F. 871; Ex parte Blazekovic, D.C., 248 F. 327; Lehto v. Scott, D.C., 251 F. 767; Ex parte Tinkoff, D.C., 254 F. 222; Napore v. Rowe, 9 Cir., 256 F. 832.

9. § 3(a) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 303(a).

§ 4(a) of the Universal Military Training and Service Act of June 24, 1948, 50 U.S.C.A.Appendix, § 454(a).

by the very provisions of the 1940 and 1948 Acts, the non-declarant alien knew that, if he did claim such exemption, he did so under penalty of being forever barred from naturalization.[10]

To sustain the contention of the Naturalization Examiner would mean that Section 315 should be interpreted to mean that the petitioner here became ineligible for citizenship because he did *not waive* rather than *apply for* his exemption as a non-declarant alien under the 1917 Selective Service Act. It would mean that Section 315 would read substantially that the non-declarant alien of 1918, who did not waive his exemption, is forever debarred from citizenship. This is obviously not the language of the statute and equally obviously was not the intention of Congress.

Section 315 clearly was intended to apply only to registrants who were subject to the 1940 and 1948 Acts.

Up until the passage of the Immigration and Nationality Act [11] of 1952, no provision barring from citizenship non-declarant aliens who claimed military exemption, had ever appeared in any Immigration or Nationality legislation. Such a provision appeared first in the Selective Service Act of 1940 and again in § 4(a) of the Selective Service Act of 1948. It was Section 4a of the Act of 1948, (see note 11) which was in fact incorporated into § 315 of the Immigration and Nationality Act of 1952.[12]

10. Section 3(a) provides in part:
"Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States * * * shall be liable for training and service in the land or naval forces of the United States: *Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States * * *.*"
(Emphasis supplied.) Act of 1940.
Section 4(a) provides in part:
"(a) Except as otherwise provided in this title, every male citizen of the United States and every male alien admitted for permanent residence, who is between the ages of 18 years and 6 months and 26 years, at the time fixed for his registration, or who attains the age of 18 years and 6 months after having been required to register pursuant to section 3 of this title, or who is otherwise liable as provided in section 6(h) of this title, shall be liable for training and service in the Armed Forces of the United States: * * * Provided further, That any male alien who is between the ages of 18 years and 6 months and 26 years, at the time fixed for registration, or who attains the age of 18 years and 6 months after having been required to register pursuant to section 3 of this title, or who is other-

wise liable as provided in section 6(h) of this title, who has remained in the United States in a status other than that of a permanent resident for a period exceeding one year (other than an alien exempted from registration under this title and regulations prescribed thereunder) shall be liable for training and service in the Armed Forces of the United States, *except that any such alien shall be relieved from liability for training and service under this title if, prior to his induction into the Armed Forces he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any alien who makes such application shall thereafter be debarred from becoming a citizen of the United States. * * *"*
(Emphasis supplied.) Act of 1948.

11. There was a provision in the Selective Service Act of 1917, as amended in 1918 (see note 3) that *declarant* aliens who withdrew their declarations in order to obtain discharge from military service, would, by such withdrawal, "forever be debarred from becoming a citizen of the United States" 8 U.S.C.A. § 366.
This section was amended, however, in 1931 and removed the bar to citizenship if the declaration of intention was withdrawn after Armistice Day, Nov. 11, 1918. Act of Feb. 11, 1931; 46 Stat. 1087; 8 U.S.C.A. § 366a.

12. On April 20, 1950, the Senate Judiciary Committee, expressly recommended in its Report of that date, the "enactment into the Naturalization Law of the essential provisions of Section 4(a) of the Selec-

I am convinced that the Congress, when it adopted § 315 intended it to apply only to those non-declarant aliens, who, under the 1940 and 1948 Draft Acts, applied for exemption under the peril of never becoming United States citizens.

My conviction in this regard is sustained by a decision of the United States Supreme Court in McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173. There, in interpreting the provisions of the 1940 Selective Service Act, the court held that the bar to citizenship provided in Section 3(a) of that Act only came into existence when a resident alien *liable* for service asked to be relieved. Since petitioner here was, by the terms of the 1917 Selective Service Act not subject to military service, even if it be assumed that he did apply for relief, any act on his part of that nature would be meaningless because he would have "applied" for relief from a *non-existent* duty or obligation. In McGrath v. Kristensen, the Supreme Court squarely and precisely interpreted the meaning of the word "application" as used in the 1940 Selective Service Act. The 1940 Selective Service Act, Section 3(a) (note 11), specifically made *all male citizens of the United States and all other male persons residing in the United States liable* for military service. By the same act, neutral aliens residing in the United States could be relieved of liability to serve by making application for such relief, but under notice that the penalty of so doing was to be forever debarred from citizenship. Kristensen, the Supreme Court stated, was not residing in the United States at the time he applied for relief from service; hence he was not *liable* for military service. Under such circumstances, the Supreme Court held, that since there was no liability for military service, the "application" for relief from such non-existent

liability could not create a bar against naturalization.

The decision of the Supreme Court makes it crystal clear that, whether an "application" for relief from military service prevents naturalization, depends upon whether the alien has statutory *liability* to serve.

Hence precedent alone requires us to hold that petitioner did not debar himself from citizenship under § 315 of the 1952 Act, even if he did make an "application," since he had no liability to serve in the military forces under the 1917 Act.

The petition for naturalization is granted.

Upon presentation and signing of appropriate findings, the petitioner will be admitted upon taking the oath required by law.

---

tive Service Act of 1948 providing that an alien who, not being deferrable or exempt from training and service, applies for relief from such training and service on the ground of his alienage prior to his induction shall be forever barred from applying for naturalization." Rep. No. 515, 81st Cong. 2nd Sess.)

On that same day, Senator McCarran introduced his first omnibus bill, containing the same provisions now appearing in § 315.